**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

HOPE S.,[1]                          )
                Plaintiff,          )
                            )
vs.                                  )
                            )   Case No. 23-CV-1977-SMY
MARTIN O'MALLEY, Commissioner of     )
Social Security,[2]                  )
                Defendant.        )
                            )
                            )

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Hope S. seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Income Security (SSI) benefits pursuant to 42 U.S.C. § 423 (Doc. 2).

## Procedural History

Plaintiff applied for DIB on June 25, 2020 and SSI on November 17, 2020 (Tr. 278-287). Plaintiff's initial alleged disability onset date was May 29, 2020 (Tr. 278, 282) and was amended to February 1, 2021 (Tr. 302). Plaintiff's claims were denied on March 31, 2021 (Tr. 198-202). Her request for reconsideration was also denied (Tr. 206-212). Plaintiff then requested a hearing with an ALJ (Tr. 218).

After conducting an evidentiary hearing, the ALJ denied the application on November 4,

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns.   *See*, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilo Kijakazi as the defendant in this suit.   No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2022 (Tr. 27-48).   The Appeals Council denied Plaintiff's request for review, making the ALJ's

decision the final agency decision subject to judicial review.   (Tr. 1-7).

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1.     The Residual Functional Capacity (RFC) was not supported by substantial evidence.

2.     The ALJ failed to properly consider medical opinions.

## Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable

statutes.   Under the Social Security Act, a person is disabled if he or she has an "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five

questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe

impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments

enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation?

and (5) Is the claimant unable to perform any other work?   *See* 20 C.F.R. § 404.1520.   An

affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled.   A

negative answer at any step, other than at step 3, precludes a finding of disability.   The claimant

bears the burden of proof at steps 1–4.   Once the claimant shows an inability to perform past work,

the burden then shifts to the Commissioner to show the claimant's ability to engage in other work

existing in significant numbers in the national economy.   *Zurawski v. Halter*, 245 F.3d 881, 886

2

(7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...."   42 U.S.C. § 405(g).   Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)*.*   At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner.   *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## Decision of the ALJ

The ALJ followed the five-step analytical framework described above (Tr. 30-48).   He found that Plaintiff had not engaged in substantial gainful activity since February 1, 2021, the amended alleged onset date (Tr. 32), and found that Plaintiff had the following severe impairments: degenerative disc disease, attention-deficit hyperactivity disorder, and bipolar disorder (Tr. 33-34).   The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the Commissioner's list of presumptively disabling impairments, 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 36-41).

The ALJ determined that Plaintiff had the RFC to do the following:

3

> Medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that she is capable of simple, routine, non-detailed and non-complex with little to no change in routine, no fast-paced production rate demands or quotas. Plaintiff could have occasional, superficial contact with coworkers and supervisors, but needed to avoid the general public. (*Id.*).

The ALJ concluded that Plaintiff was not able to perform her past relevant work but that there were other jobs in significant numbers in the national and local economy that Plaintiff could perform, such as stocker, cleaner, and laundry worker (Tr. 41-42). Thus, the ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. 43).

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

## Agency Forms

Plaintiff was born in 1966 (Tr. 303) and was 55 years old at the time of the ALJ's decision. (Tr. 42). She claimed she was disabled due to bipolar disorder, anxiety-panic disorder, major depressive disorder, panic attacks, other back disorders, arthritis, chronic pain syndrome, neck repair, sciatica, and ADHD (Tr. 306). Plaintiff took Aderall for her ADHD, Colazapam for her anxiety-panic disorder, Guanfacine Hydrochloride and Lamictal X MG for her bipolar disorder, and Prednisone for her sciatica (Tr. 309). Plaintiff had worked in the past as an ophthalmology technician (Tr. 308, 55). She originally indicated she stopped working on May 29, 2020, because of her conditions (Tr. 306, 307), but later clarified that she continued to work until February 2021 (Tr. 53).

Plaintiff completed a function report in January 2021 (Tr. 323-335). She stated that she

4

has difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, talking, stair climbing, with memory, with concentration, with understanding, with following instructions, and with getting along with others (Tr. 328-329).   She has trouble finishing what she starts and has trouble with concentration on tasks (Tr. 328), has difficulty with authority figures (like bosses), and does not handle stress or changes in routine well (Tr. 330).

**Evidentiary Hearing**

Plaintiff was represented by Accredited Disability Counsel at the October 11, 2022 hearing (Tr. 49-81).   She testified that she was diagnosed with bipolar, depression, anxiety and ADHA in 2007 (Tr. 54).   She had irritability, anxiety, would get upset and mad, and then would just start to cry (Tr. 58).   She also testified regarding her grief from her sisters passing away from COVID and being in abusive relationships for years (Tr. 53, 72-73).   She likes to spend time with her daughter and grandchildren (Tr. 63).   Plaintiff also testified regarding her physical ailments including, back pain, fusion of her cervical spine, chronic pain in her hips and lower back, and pain with sitting, standing, walking and lifting (Tr. 62, 65-69).

A vocational expert (VE) testified that Plaintiff's past work was characterized as an ophthalmic technician, which is light as performed, skilled, SVP: 6 (Tr. 75).   The ALJ posed a hypothetical to the VE that comported with the ultimate RFC assessment – a person between age 54 to 56 with an 11th grade or limited education and past work as described – that can perform medium work, lifting maximum 25 pounds frequently and 50 pounds on occasion – assuming a capacity for simple, non-detailed, non-complex job tasks in a setting where there's little to no change in the work routine day to day – avoidance of the general public (Tr. 75).   The VE testified that this person could not perform any of Plaintiff's past work (Tr. 75-76).   However, there is

5

unskilled work in the national economy that the hypothetical could perform:   stocker, cleaner, and laundry worker (Tr. 76).   These jobs do not require more than occasional interaction with coworkers and supervisors and do not involve any fast-paced production rate demands or quotas. (*Id.*).   The VE further testified that no jobs at the medium level would allow for an individual to have an option to sit and stand every 30 minutes and take a minute or 2 to change position from seated to standing and vice versa.   Finally, the VE testified that if the hypothetical individual was in the light exertional range instead of the medium exertional range, those jobs identified by the VE would not be possible (Tr. 77).

### Relevant Medical Records

Plaintiff began treating with Dr. Christopher Loynd DO at SIHF Healthcare in 2007 when she was hospitalized at Kenneth Hall Regional Hospital Behavioral Health Unit (Tr. 624, 697). Dr. Loynd treated evaluated and treated Plaintiff for bipolar disorder and ADHD (Tr. 428-453, 475-505, 517-556, 726-796).   His notes indicate that Plaintiff visited him regularly, and he would update his notes with her current status including her work status, personal life status, sleeping status, and symptoms of depression, anxiety and agitation.   (*Id.*).   Dr. Loynd prescribed various medications for Plaintiff at various times to aid her with her depression, bipolar disorder, ADHD, anxiety, and insomnia.   (*Id.*).

In late 2020 and early 2021, Plaintiff reported that her work was stressing her and causing her extreme anxiety (Tr. 517-556).   She progressed to working part-time but still reported to Dr. Loynd that she was dealing with extreme anxiety and more agitation and anxiety.   (*Id.*).   The records note that in March 2021, Plaintiff was not working anymore and was suffering from significant depression, anxiety, agitation, and flashbacks to her abusive past (Tr. 726-796).

6

Plaintiff began cleaning houses and visiting with a life coach. By January 2022, she reported that she had significant depression, more hypomanic episodes, and psychosis. (*Id.*). Dr. Loynd made several medication changes, and Plaintiff reported that her symptoms had improved with medication by September 2022. (*Id.*).

Plaintiff also treated with various physicians for her medical conditions. Dr. Paul H. Young performed an anterior cervical microdiscectomy decompression of the C3-C4, C4-C5, C5-C6, and C6-C7 in June 2013 (Tr. 23).

Plaintiff went to Mercy Hospital on November 10, 2016 and December 4, 2019 reporting lumbar pack pain/sciatica (Tr. 567-600). She was examined, treated, and released with instructions to see her primary care physician for ongoing pain. (*Id.*).

Plaintiff visited Dr. Anil Gupta MD in January and February 2021 as her new primary care physician (Tr. 601-623). Dr. Gupta diagnosed Plaintiff with chronic kidney disease and prescribed Xanax and other medication for hypothyroidism. (*Id.*).

In February 2021, Plaintiff returned to Mercy Hospital complaining of right flank pain/abdominal pain (Tr. 567-600). A CT was performed on her abdominal and pelvic areas. (*Id.*). The testing confirmed that there were no acute factures of Plaintiff's spine, but she did have degenerative changes. (*Id.*).

Plaintiff returned to Mercy in September 2021, complaining of back pain and shortness of breath (Tr. 652-695). She was admitted overnight and monitored while diagnostic testing was completed. (*Id.*). She was ultimately released and told to follow-up with her primary care physician. (*Id.*).

Plaintiff again reported to the Mercy ER in May 2022 for bilateral foot and ankle pain from

a fall.  (*Id.*).   She was treated and released with walking boots and crutches.   (*Id.*).

Plaintiff saw Dr. Ritesh Gandhi MD in September 2022 as her new primary care physician (Tr. 701-724).   Dr. Gandhi's initial assessment included chronic bilateral low back pain with sciatica, overweight, hypothyroidism, kidney disease, anxiety disorder, and abnormal EKG.   (*Id.*).

## Opinions of Treating Physicians

On March 16, 2021, Dr. Christopher Loynd issued an opinion letter regarding Plaintiff's conditions and need for disability benefits (Tr. 624).   He noted that that medications were not helping Plaintiff's depression and anxiety, and that Plaintiff's condition was worsened by the death of 2 of her sisters and the ongoing abusive relationship with her husband.   He opined that Plaintiff was not able to work anymore.   (*Id.*).

Dr. Loynd issued another letter on January 20, 2022 (Tr. 697).   He opined that Plaintiff was unable to work because her depression and anxiety had hit an all time low.   (*Id.*).   He indicated that medications were not helping as any benefit they had caused other side effects that prevented her from focusing and concentrating and being able to complete tasks.   (*Id.*).   He also opined that Plaintiff's depression was debilitating because she was in a poor mood, suffered from crying spells, poor sleep, fatigue, anhedonia, and feelings of hopelessness and helplessness.   (*Id.*). Dr. Loynd indicated that Plaintiff was beginning to suffer from more manic symptoms, racing thoughts, and even psychotic symptoms of intermittent auditory hallucinations.   (*Id.*).   In his opinion, based upon her current manic state of bipolar disorder, she was unable to work and unable to follow tasks, stay focused, or maintain stable social interactions with others.   (*Id.*).

## Consultative Examinations

Dr. Irim Massay MD conducted an internal medicine examination of Plaintiff on November

12, 2021(Tr. 642-651).   He noted that Plaintiff was not in acute distress, had a normal gait, was capable of full squat and normal stance, was capable of getting on and off the examination table, and and able to rise from a chair.   There were no major findings.   Dr. Massay's clinical impressions were: chronic right lower back pain; arthritis in elbows and ankles; degenerative disc disease; chronic kidney disease; constipation; light headedness with anxiety and sudden movement; fatigue; stress related incontinence; insomnia; and migraines.   (*Id.*).

Plaintiff underwent a psychological consultative examination with Dr. Glen Wurglitz PsyD MSCP on March 25, 2021 (Tr. 626-631).   She reported that her main complaints were anxiety, stress, depression and bipolar disorder.   Dr. Wurglitz noted that Plaintiff's mood was anxious, that she was nervous and uneasy, and that her expressions during the evaluation indicated the same. His diagnostic impressions were: ADHD, bipolar disorder, and spouse/partner violence.   (*Id.*).

Plaintiff underwent a second psychological consultative examination with Dr. Stone Kraushaar PsyD on November 21, 2021 (Tr. 637-641).   He noted that Plaintiff had moderate to marked impairment of her ability to understand, remember, and apply information and her ability to interact with others, and that she had moderate impairment of her ability to adapt and manage herself.   He did not find any impairment for deficiencies or concentration, persistence, or maintaining pace.   Dr. Kraushaar's diagnoses include:   moderate major depressive disorder; bipolar disorder; and anxiety disorder.   He opined that Plaintiff had a fair to poor prognosis. (*Id.*).

### State Agency Consultants' Opinions

Dr. David Voss PhD reviewed the evidence and opined that Plaintiff had mild impairments with respect to understanding, remembering or applying information, interaction with others, and

adapting or managing oneself (Tr. 92). He found that she had moderate impairment in concentration, persistence, and maintaining pace with sustained concentration and persistence limitations. (*Id.*, Tr. 98). He found that Plaintiff can maintain the concentration and persistence necessary to carry out more than simple tasks in a reasonably punctual fashion and consistent pace in a typical work environment (Tr. 99), and that she would have no difficulty attending work regularly and would require no special supervision beyond what is commonly provided in an ordinary work setting. (*Id.*). He opined that Plaintiff's psychological impairment would not interfere with her ability to complete routine work tasks and that she retained the mental capacity for work related activities that involve more than simple tasks but less than complex duties, within her physical limitations (Tr. 100).

Dr. Ellen Rozenfeld PsyD reviewed the evidence and opined that Plaintiff had moderate impairments with respect to interaction with others, concentration, persistence or maintaining pace, and adapting or managing oneself (Tr. 146). She found that Plaintiff had mild impairment with understanding, remembering, or applying information. (*Id.*). She opined that Plaintiff had the ability to carry out tasks with adequate persistence, that pace would be moderately impaired for detailed/complex tasks, but adequate for completion of routine repetitive tasks (Tr. 154). Dr. Rozenfeld also opined that Plaintiff would do best in a work setting with less public contact and no sustained communication or problem solving with the public (Tr. 155) and would be suitable for work that does not require changing tasks from day to day, but rather has a fairly regular set of job duties and expectations (Tr. 156).

Dr. Charles Kenney MD reviewed the evidence and opined that Plaintiff had exertional limitations (Tr. 95): He opined that Plaintiff could only occasionally lift and/or carry 20 pounds

and could frequently lift and/or carry 10 pounds; and could only stand and/or walk for a total of 6 hours in an 8 hour workday and sit for a total of 6 hours in an 8 hour workday. In his opinion, Plaintiff was limited to work consistent with light exertional level with only frequent climbing of ramps/stairs, climbing of ladders/ropes/scaffolds, and stooping (Tr. 96).

Dr. Lisa Green-Hill DO reviewed the evidence and opined that Plaintiff had exertional limitations (Tr. 150): Plaintiff could only occasionally lift and/or carry 50 pounds and could frequently lift and/or carry 25 pounds; and could stand or sit for about 6 hours in an 8 hour workday.  In her opinion, Plaintiff was limited to work consistent with the medium exertional level with only frequent climbing ladders/ropes/scaffolds, stooping and crawling.  (*Id.*).

## Discussion

Plaintiff asserts that the ALJ erred in assessing her RFC and in considering medical opinions.   The Court discusses each argument in turn.

### Residual Functional Capacity (RFC)

The ALJ determined that Plaintiff, despite her limitations, had the following RFC:

> Medium work except the claimant is capable of simple, routine, non-detailed and non-complex with little to no change in routine, no fast-paced production rate demands, or quotas; may have occasional, superficial contact with coworkers and supervisors, and avoid the general public.

Plaintiff argues that although the ALJ's decision summarizes some of the medical evidence, it fails to explain how the evidence supports the ultimate RFC findings.

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments.   20 C.F.R. § 404.1545(a).   It is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," *Id.*, and must be supported by substantial evidence.   *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). An "ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). However, "an ALJ need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion." *Id. citing Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008).

In this case, the ALJ supported his RFC determination with substantial evidence and accurately characterized the medical evidence. The ALJ did not dispute that Plaintiff had medical impairments (both physical and mental) that caused some difficulties, but questioned Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms. The ALJ engaged in a detailed discussion of the medical record and was entitled to rely on the objective medical and other evidence in the record.

As it related to Plaintiff's physical impairments, the ALJ reviewed her history of back disorders, arthritis, chronic pain syndrome, neck repair, and sciatica. The ALJ found that while Plaintiff had a history of back pain, decreased range of motion, reported radiculopathy and pain, she had limited and infrequent treatment of those conditions which was largely confined to pain medication. Plaintiff did not see a neurosurgeon or seek any other specialist treatment. Additionally, in the consultative physical exam, Plaintiff had normal neurological findings with only some reduced range of motion in the cervical and lumbar spine. The ALJ found that the "grossly normal consultative exam" supported that Plaintiff could perform work with medium

exertional level.

The ALJ also evaluated the administrative medical findings and concluded that the findings and opinions of Dr. Lisa Green-Hill DO were more credible than the opinions of Dr. Charles Kenny MD.  Specifically, the ALJ found that Dr. Green-Hill's opinions were supported by the most recent and updated records.  The ALJ noted that none of Plaintiff's treating physicians offered any other opinions regarding her physical abilities or limitations, or any opinions that Plaintiff was more limited than the ALJ found.  There were no limitations documented in her limited physical medical records, nor was there ongoing treatment that would support a different conclusion.

As it related to Plaintiff's mental impairments, the ALJ reviewed Plaintiff' history of bipolar disorder, anxiety-panic disorder, major depressive disorder, panic attacks, and ADHD.  The ALJ found that Plaintiff suffered from these psychological conditions prior to her alleged onset date while she was still engaged in substantial employment, and that after her amended alleged onset date, she continued largely with unchanged mental health treatment.  The ALJ conclude that Plaintiff's alleged limitations were inconsistent with her treatment records, which did not identify abnormal mental status exams consistent with her alleged problems with concentration, difficulty around others, and trouble functioning.

The ALJ evaluated each consultative psychological exam and the administrative medical findings.  The ALJ found the opinions of Dr. Ellen Rozenfeld, PsyD more persuasive because her findings were based on updated records and supported additional mental restrictions not identified by Dr. David Voss PhD.  While the ALJ found Dr. Rozenfeld's opinions to be more persuasive, based on Plaintiff's memory problems and distractibility, he found that the additional mental restrictions identified in the RFC and supported by the first consultative psychological exam were

warranted.

The ALJ discredited the opinions of treating physician Dr. Christopher Loynd DO, finding that his opinions were conclusory and not supported by his treatment notes. The ALJ also discredited the opinions of the second consultative examination by Dr. Stone Kraushaar PsyD because his opinion that Plaintiff had moderate to marked impairment was based on Plaintiff's reporting and not on his direct observations. "Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). Further, Dr. Kraushaar's opinions were inconsistent with Dr. Rozenfeld's, who had greater access to the record and opined that Plaintiff had mostly moderate mental impairments, including trouble focusing.

The above-noted findings and opinions were analyzed in detail and weighed by the ALJ in concluding that Plaintiff was capable of medium work consistent with the state disability finding. Moreover, the complete record and Plaintiff's treatment notes supported the conclusion that Plaintiff was capable of simple work with additional restrictions consistent with the findings of the consultative exams. The RFC articulates these findings and opinions.

The ALJ bears "the 'final responsibility' for determining a claimant's residual functional capacity." *Fanta v. Saul*, 848 Fed. Appx. 655, 658 (7th Cir. 2021) quoting 20 C.F.R. § 404.1527(d)(2). The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by the substantial evidence." *Jeske v. Paul*, 955 F.3d 583, 595-596 (7th Cir. 2020). The ALJ must only provide a logical bridge between the evidence and his conclusions. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Here, the ALJ did so, and

his credibility determinations are due special deference as factual findings.   *Matthews v. Saul*, 833 F. App'x 432, 438 (7th Cir. 2020).   Here, Plaintiff offers no meaningful reason the ALJ's credibility determination should not be upheld, nor does she point to any specific error in the ALJ's analysis.   The ALJ addressed the reported impairments and gave his reasoning for why the objective medical evidence supported his conclusions, and the record supports this conclusions. As such, this Court finds the ALJ properly determined that Plaintiff has the RFC for medium work with certain limitations.

### Considered of the Medical Opinions.

With respect to consideration of medical opinions, the regulation provides:

> "When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."

> 20 C.F.R. § 404.1520c(a).

Under the applicable regulation, the ALJ evaluates the persuasiveness of each medical opinion based upon:  (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements. 20 C.F.R. § 404.1520c(c)(1)-(5).   The ALJ must explain only how he considered the first two factors – supportability and consistency – but need not explain his consideration of the other factors.   *Id.*; 20 C.F.R. § 404.1520c(b)(2).   Supportability measures how much, or to what extent, the medical opinion is explained by the provider and supported by the objective findings.   20 C.F.R. § 404.1520c(c)(1).   Consistency addresses the extent to which a medical opinion is consistent with the record as a whole, including both medical and nonmedical sources.   20 C.F.R.

§ 404.1520c(c)(2).   The ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence.   *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

Plaintiff underwent 3 consultative examinations – 1 medical and 2 psychological – and 4 state agency consultants provided administrative medical findings.   Plaintiff's treating psychologist, Dr. Christopher Loynd also provided his medical opinions.   The ALJ assessed whether each were consistent with and supported by the medical records and Plaintiff's history. The ALJ gave little weight or less persuasive authority to:

(1) Dr. Christopher Loynd DO because his opinions were conclusory, concerned issues reserved for the commissioner, and were unsupported or inconsistent with his own treatment records and the mental status consultative exams;

(2) Dr. Stone Kraushaar PsyD because his opinion was not supported by his exam, was based on Plaintiff's self-reporting instead of his own direct observations, and was inconsistent with Dr. Ellen Rozenfeld PsyD's record and opinion that was based upon greater access to the record;

(3) Dr. David Voss PhD because although his opinion was well supported by the record that he reviewed, it was inconsistent with the findings of Dr. Ellen Rozenfeld PsyD who had Plaintiff's updated medical records; and,

(4) Dr. Carles Kenny MD because although his opinion was well supported by the record that he reviewed, it was inconsistent with the updated records and findings of Dr. Lisa Green-Hill DO.

The ALJ found the opinions of Dr. Lisa Green-Hill DO and Dr. Ellen Rozenfeld PsyD the most persuasive and supported by the totality of the record.   The ALJ's opinion deviated slightly on the mental impairment by providing Plaintiff with more, not less, restrictions in the RFC determination.

The ALJ identified and referenced the evidence and weight he ascribed to various

portions of the evidence in supporting his opinion and decision – logically building a bridge to his ultimate conclusions.   Thus, his conclusions were consistent and were supported by the evidence.

## Conclusion

After careful review of the record, the Court concludes that the ALJ committed no errors of law, and that his findings are supported by substantial evidence.   Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for DIB and SSI benefits is **AFFIRMED**.   The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED:   September 23, 2024**

_____
**STACI M. YANDLE**
**United States District Judge**

17